Entered on Docket
August 28, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed August 27, 2007

_____
Marilyn Morgan
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SECURITY NATIONAL GUARANTY, INC., dba SNG DEVELOPMENT COMPANY and SNG REALTY,<br><br>Debtor. | Case No. 03-55847-MM<br><br>Chapter 11 |
| SECURITY NATIONAL GUARANTY, INC., dba SNG DEVELOPMENT COMPANY and SNG REALTY,<br><br>Plaintiff,<br><br>vs.<br><br>SHORES LLC, et al.,<br><br>Defendants. | Adversary No. 03-5504 |
| SECURITY NATIONAL GUARANTY, INC., dba SNG DEVELOPMENT COMPANY and SNG REALTY,<br><br>Plaintiff,<br><br>vs.<br><br>SHORES LLC, et al.,<br><br>Defendants. | Adversary No. 04-5102<br><br>**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR ATTORNEYS' FEES** |

1

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR ATTORNEYS' FEES**

# INTRODUCTION

Before the court are the cross-motions of Security National Guaranty, Inc. and Shores LLC for attorneys' fees as the prevailing party. Security National Guaranty, Inc. seeks an award of $682,631.36 in fees only, while Shores LLC and the other defendants seek an award of $517,357 in fees and costs. At the court's request, the parties have also briefed Shores LLC's entitlement to attorneys' fees pursuant to 11 U.S.C. § 506(b).

# FACTUAL BACKGROUND

### A. *The Loan Agreement, Promissory Note, and Deeds of Trust*

Security National Guaranty, Inc. (SNG) owns Monterey Bay Shores, a 40-acre undeveloped parcel along the coast of Highway 1 in Sand City. It acquired the property with funds from a loan arranged by a licensed real estate broker, Don D. Lukens, dba Community Group Funding. On December 30, 1996, SNG and Lukens executed a loan agreement and a promissory note for $7.5 million. The principal amount of the note was to cover SNG's purchase of Monterey Bay Shores for $4 million, an 18-month interest reserve, an entitlements reserve, and loan fees of $1,206,000. The note accrued interest at 14%, included an 18% default interest rate, and matured on January 6, 1999. Paragraph 12 of the note provides:

> The undersigned agrees to pay all costs including, without limitation attorney fees, incurred by the holder of this Note in enforcing payment whether or not suit is filed, and including, without limitation, all costs, attorney fees, and expenses incurred by the holder of this Note in connection with any bankruptcy, reorganization, arrangement, or other similar proceedings involving the undersigned that in any way affects the exercise by the holder of this Note of its rights and remedies under this Note. All costs incurred by the holder of this Note in any action undertaken to obtain relief from the stay of bankruptcy statutes are specifically included in those costs and expenses to be paid by the undersigned.

Pursuant to the loan agreement, the loan was to be funded over multiple phases. The property was acquired by two separate purchases and secures two separate first deeds of trust. SNG acquired a 50% interest in the Monterey Bay Shores property from the State Parks Foundation in a sale that closed on January 6, 1997. A deed of trust on the half-interest in the property was recorded that same day (the "Lukens deed of trust"). Lukens funded the disbursement from investment proceeds of various lenders including the Ng Cobb Trust and Straight Jacket Enterprises Trust. He documented the investor

2

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR ATTORNEYS' FEES**
Case: 04-05102    Doc# 74    Filed: 08/27/07    Entered: 08/28/07 17:02:13    Page 2 of 15

advances as multiple lender transactions for which he served as broker. He subsequently assigned fractionalized interests in the Lukens deed of trust to various investors and consolidated some of the interests in Shores LLC, which was formed in June 1997. Lukens was designated as Shores' managing member. SNG believed that some of the assignees did not actually advance funds for this project but had lost funds invested in other unrelated loans arranged by Lukens.

SNG experienced significant delays and difficulty in obtaining loan advances for entitlements. It later learned that Lukens had not deposited the interest reserve or the entitlements reserve into interest-bearing trust accounts as SNG had expected. Acquisition of the remaining 50% interest in Monterey Bay Shores was deferred several times because Lukens had not yet raised the funds. SNG was required to obtain several extensions of the purchase contract from the owner, the Dezonia Family Trust, agreeing to pay an increased purchase price, interest, penalties, and real property taxes. Lukens' real estate brokerage license expired on September 10, 1997 while he was under investigation by the California Department of Real Estate, the Federal Bureau of Investigation, and the Securities and Exchange Commission for fraud and other improprieties involving investors' funds. The sale of the 50% interest in Monterey Bay Shores from the Dezonia Family Trust to SNG finally closed on November 26, 1997. The source of the funds for the acquisition was also investors. SNG granted to Shores a deed of trust in the property (the "Shores deed of trust") that is equal in priority to the one that was recorded on January 6, 1997.

SNG intended to develop the property as a mixed use resort. It obtained a tentative subdivision map and a coastal development permit from Sand City. However, its application for a development permit from the California Coastal Commission was denied, and a writ of mandamus proceeding by SNG currently remains pending. SNG was unable to pay the note when it matured on January 6, 1999 because the entitlements process was not complete. After Lukens recorded a notice of default and noticed a Trustee's sale, SNG, Lukens, and Shores negotiated a forbearance agreement dated May 15, 1999. Under the agreement, Lukens and Shores rescinded the notice of Trustee's sale and extended the maturity date of the note to January 6, 2000 in return for a $750,000 fee. The parties also agreed to the accounting treatment for two other real properties involved in the transaction.

SNG defaulted on the modified note when it matured on January 6, 2000. In August 2001, SNG

negotiated a tentative agreement for the State of California Parks and Recreation Department to acquire the Monterey Bay Shores property for at least $15 million, subject to appraisal, but the Parks Department did not proceed with the sale. In fact, it lowered its offered purchase price to $5 million. SNG believed that Shores and the other assignees of the deed of trust interfered with and disrupted SNG's sale efforts and usurped SNG's role with respect to the development and marketing of the property in discussions with governmental authorities and agencies.

Shores commenced non-judicial foreclosure proceedings, asserting a balance due of $16,023,687.10 in notices of default recorded April 2, 2003 and July 11, 2003.

## B.   *The Litigation*

SNG filed a complaint on June 18, 2003 in Monterey County asserting claims for rescission based on false promise; rescission based on intentional fraud; rescission based on mistake; reformation of contract; breach of contract; declaratory relief; intentional interference with prospective economic advantage; negligent interference with prospective economic advantage; general negligence; slander of title; an accounting; and preliminary and permanent injunction. SNG named as defendants Shores and its successor managing member, George Hall. Lukens, who had filed a bankruptcy petition, was not a defendant. SNG also named other third parties it believed held assigned interests in the Lukens deed of trust: Eric Dickerson, individually and as the trustee of Straight Jacket Enterprises Trust; Carl G. Oblinger, Trustee of the Carl G. Oblinger Trust; James Buckner Cobb, Jr. and Ivy Oi Mui Ng Cobb, Co-Trustees of the Ng Cobb Trust; Darren Carrington; Vickie L. Carrington; Dorothy Juanita Knott; and Shelley E. Giacopuzzi.

By this complaint, SNG sought rescission of the loan agreement based on fraud or mistake and offered to tender back all benefits received, i.e., restitution. It sought a reduction of the amount of SNG's liability on the note to $3.5 million plus interest on the basis that these were the only amounts actually funded. It asserted the interest rate was usurious. It also asserted a breach of contract based on the underfunding of the loan and the failure to deposit the interest and entitlements reserves in trust accounts. SNG asserted tort claims based on slander of title and interference with SNG's relationship with the Parks Department. The relief sought included a setoff of actual and punitive damages of $10 to more than $20 million against the liability on the note, Finally, SNG sought a declaration of the

4

rights, interests and duties of the parties under the agreements, as well as an accounting and injunctive relief.

SNG filed a chapter 11 petition on August 22, 2003 and removed the Monterey County Superior Court action to this court. In its bankruptcy schedules, SNG listed the amount of its secured debt to Shores as $3.5 million. It also scheduled its litigation claims against Shores with a value between $12 to $20 million. Upon demand and threat of sanction, SNG voluntarily dismissed defendants Darren Carrington, Vickie L. Carrington, Dorothy Juanita Knott, and Shelley E. Giacopuzzi from the proceeding without prejudice on November 17, 2003. Shores sold its interest in the note and deed of trust on February 18, 2004 to Berkley Inc. pursuant to a contract whereby Berkley acquired Shores' rights in the litigation and agreed to defend and indemnify Shores and other defendants from all claims and liabilities. However, Shores remained the named defendant while Berkley became the real party in interest and stipulated to be bound by the judgment.

On March 23, 2004, SNG filed a new adversary complaint for declaratory relief against Shores; Eric Dickerson individually and as Trustee of the Straight Jacket Enterprises Trust; Carl G. Oblinger, Trustee of the Carl G. Oblinger Trust; Crown Motel LLC; James Buckner Cobb, Jr. and Ivy Oi Mui Ng Cobb, Co-Trustees of the Ng Cobb Trust. The various assignments by Lukens of fractionalized interests in the Lukens deed of trust and the recordation of two separate deeds of trust in first position rendered it difficult for SNG to ascertain the relative percentage interests and priorities of the beneficiaries for purposes of a sale or a plan of reorganization. Some assignments appeared to be outside the chain of title. SNG sought a judicial determination of the validity, extent, amount, and priority of the various liens on the property and whether the assignees of the Lukens deed of trust are secured by the entire property or only an undivided one-half interest. By this time, SNG believed that approximately $4.1 million had been advanced under the loan agreement; however, SNG asserted that Shores declined to provide an accounting upon request. Shores disputed the claims asserted by SNG in both adversary proceedings and has maintained at all times that the full amount of the principal and all accrued interest was due and payable. The two adversary proceedings were ordered consolidated in August 2004 for purposes of trial.

In January 2005, the court granted summary judgment in favor of defendants George Hall, Carl

5

G. Oblinger and the Carl G. Oblinger Trust as to all claims for relief directed against them in the removed action. It also granted summary judgment to Shores as to the tort claims for interference with prospective economic advantage, general negligence, and slander of title. In the declaratory relief action, the court granted summary judgment in favor of Crown Motel LLC, Carl G. Oblinger and the Carl G. Oblinger Trust. It also granted partial summary adjudication upon Shores' unopposed motion, issuing a declaration that the Lukens deed of trust and the Shores deed of trust create a first priority lien on the two undivided 50% interests in Monterey Bay Shores and that the two deeds of trust are equal in priority. Together, George Hall, Crown Motel LLC, Carl G. Oblinger, the Carl G. Oblinger Trust, Darren Carrington, Vickie L. Carrington, Dorothy Juanita Knott, and Shelley E. Giacopuzzi are referred to herein as the non-Shores defendants. Counsel for the defendants estimates that it expended $196,925 in fees and expenses in connection with the representation of the non-Shores defendants in this litigation.

Following several pre-trial conferences with the parties, the court issued a joint pre-trial order on April 7, 2005 that superceded the pleadings in these proceedings and that delineated the stipulated and disputed fact issues and legal issues for trial. As the parties approached trial, the remaining disputed issues were essentially limited to the following:

- Whether any portions of the loan are exempt from the usury laws;
- Whether the interest and entitlements reserves were funded and whether interest may accrue on those amounts;
- Whether the parties agreed to enforceable modifications of the loan agreement with respect to (1) the accounting treatment for two other real properties involved in the transaction and (2) the payment of interest and penalties for the deferment of closing on the acquisition of the interest of the Dezonia Family Trust;
- Whether Lukens arranged any portion of the loan after the expiration of his brokerage license on September 10, 1997;
- Whether the May 15, 1999 forbearance agreement is subject to the usury laws;
- Whether Lukens misrepresented any material facts to induce SNG to enter into the loan agreement and whether SNG is entitled to rescission of the agreement on that basis;
- Whether Lukens breached the loan agreement by failing to fund the required advances; and
- The appropriate interest calculation.

At trial, Shores asserted that the debt on the note was $18,950,687.68, while SNG asserted it was $7,759,416.33. SNG asserted that portions of the loan were usurious because they were arranged after Lukens lost his license, so they were not subject to the licensed broker exemption to usury. It contended

6
**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR ATTORNEYS' FEES**
Case: 04-05102   Doc# 74   Filed: 08/27/07   Entered: 08/28/07 17:02:13   Page 6 of 15

that the interest and entitlements reserves had not been funded in interest-bearing accounts and that Lukens agreed to modifications of the loan agreement to reduce the amounts due from SNG for late penalties and interest and on account of two other properties. Shores asserted that the loan was fully funded and that no portion of the loan was usurious. It contended that the loan was exempt from the usury prohibition because the loan was arranged before Lukens lost his license. It also asserted that the loan agreement did not require that the reserves be segregated in trust accounts. Finally, it disputed that the parties had entered into enforceable modification agreements reducing the amounts due under the loan. At the close of the evidence, SNG elected its remedies and determined to forego its claims to rescind the note and deed of trust.

Following the trial, the court issued its Memorandum Decision and Order After Trial on July 20, 2005 and a Judgment on November 1, 2005. The court found that the funding of the acquisition of the Dezonia interest and the May 15, 1999 forbearance agreement were arranged after Lukens lost his license. Consequently, these portions of the loan were usurious, so interest at the legal rate began to accrue on those amounts only at maturity. The court further determined that because the reserve amounts were not funded in trust accounts, they did not accrue interest until the amounts were actually advanced and made available to SNG. However, it held that SNG had waived its claim for breach of contract based on this failure to segregate the funds. Finally, the court found that certain modification agreements, which SNG claimed entitled it to offsets, were unenforceable and that SNG remained liable to repay about $716,000 that it disputed. On November 1, 2005, the court issued a final judgment determining that SNG was liable to repay the principal balance due under the note in the amount of $6,761,784, plus interest of $2,714,161.57, totaling $9,475,945.57.

### LEGAL DISCUSSION

**I.    Security National Guaranty is the Prevailing Party Under California Civil Code § 1717**.

Under the American Rule, litigants bear their own attorneys' fees. A prevailing litigant is ordinarily not entitled to attorneys' fees from the non-prevailing party. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975); Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co., __ U.S. ___, 127 S.Ct. 1199, 1203 (2007). This default rule can be overcome by

7

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR ATTORNEYS' FEES**
Case: 04-05102    Doc# 74    Filed: 08/27/07    Entered: 08/28/07 17:02:13    Page 7 of 15

statute or an enforceable contract provision allocating attorneys' fees. Travelers, 127 S.Ct. at 1203. California Civil Code § 1717 is such a statutory provision that allocates attorneys' fees to the prevailing party. It provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Section 1717 ensures mutuality of remedy for contractual attorneys' fees claims by making an otherwise unilateral right reciprocal in nature when the contract provides the right to only one party. Santisas v. Goodin, 17 Cal. 4th 599, 610-11 (1998). It allows the recovery of attorneys' fees by the prevailing party whether or not it is the party specified in the contract. Id. at 611.

Section 1717(b) defines the "party prevailing on the contract" as the "party who recovered a greater relief in the action on the contract." Greater relief is not necessarily the same as "net monetary recovery." Sears v. Baccaglio, 60 Cal. App. 4th 1136, 1154 (Cal. Ct. App. (1st Dist.) 1998). The court is to compare the relief awarded on the contract claims with the parties' demands on those claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. Hsu v. Abbara, 9 Cal. 4th 863, 876 (1995). In determining which is the prevailing party, it must weigh the extent to which each party has succeeded or failed to succeed in its contentions. Id. The court has broad discretion to determine which is the prevailing party. Jackson v. Homeowners' Assn Monte Vista Estates-East, 93 Cal. App. 4th 773, 789 (Cal. Ct. App. (4th Dist.) 2001); Sears v. Baccaglio, 60 Cal. App. 4th at 1158.

On balance, SNG is the party that obtained the greater success in achieving its litigation objectives in these proceedings and is entitled to an award of attorneys' fees under Civil Code §1717. It appears that its primary objectives were to obtain a declaration that portions of the loan were usurious, to reduce its liability and to repay only the actual amount advanced with interest to accrue at an appropriate rate from the time of the advance, and to obtain a judicial determination of the nature and extent of the liens on the property. It cannot reasonably be subject to question that SNG is the prevailing party as to the claim of usury. Resolution of a usury claim necessarily involves a determination of the validity of the interest provision of the underlying agreement, so it constitutes a

claim on the contract for purposes of § 1717. <u>Del Mar v. Caspe</u>, 222 Cal. App. 3d 1316, 1335 (Cal Ct. App. (6th Dist.) 1990). Shores understates the effect of the finding that the loan was usurious. SNG effectively reduced its liability by one-half because interest did not accrue until maturity and only at the legal rate, not 14%. It was also vindicated at trial when the evidence established that the reserves and the entire principal amount of the loan had not been funded. The consequence was that interest did not begin to accrue until the funds had been advanced. Its breach of contract claim in connection with the reserves failed, however, based on waiver. Notwithstanding, SNG accomplished its broad objective of reducing its liability for accrued interest. A party that is denied direct relief on a claim may nonetheless be found to be the prevailing party if it is clear that the party has otherwise achieved its main litigation objective. <u>Hsu v. Abbara</u>, 9 Cal. 4th at 877.

Contrary to Shores' contentions, it did not appear that SNG sought to have the note declared invalid and unenforceable in its entirety. SNG conceded liability to repay the actual amount advanced, subject to any offsets. In the pleadings, it offered to tender restitution upon rescission as it was required to do. However, it elected its remedies at the close of the evidence and decided to forego its rescission claims. Shores asserts that SNG is precluded from obtaining an award of attorneys' fees for services relating to the rescission claims, which are based in tort. However, a claim for rescission of a contract based on fraud constitutes a contract claim for purposes of §1717. <u>Star Pacific Investments, Inc. v. Oro Hills Ranch, Inc.</u>, 121 Cal. App. 3d 447, 461 (Cal. Ct. App. (3rd Dist.) 1981). SNG may recover its fees for prosecution of the rescission claims.

Shores further asserts that it is the prevailing party based upon the determination that the deeds of trust were valid and in first position. The court notes that Shores' summary judgment motion on the issue was unopposed, and SNG could well have brought the same motion. It does not appear that SNG sought to defeat the security interest. Rather, it merely sought a declaration of the nature and extent of the lien and to limit the lien to the amount of funds actually advanced and to the parties that furnished those funds. The various assignments and confusion in the chain of title necessitated a determination of the nature and extent of the lien. An action seeking a declaration of rights based on an agreement constitutes an action on the contract for purposes of Civil Code § 1717. <u>Texas Commerce Bank - El Paso, N.A. v. Garamendi</u>, 28 Cal. App. 4th 1234, 1239-40 (Cal Ct. App. (2nd Dist.) 1994). SNG may

recover its fees for prosecuting the declaratory relief action.

The court has discretion to apportion fees awarded under Civil Code § 1717. Abdallah v. United States Savings Bank, 43 Cal. App. 4th 1101, 1111 (Cal. Ct. App. (1st Dist.) 1996), cert. denied, 519 U.S. 1081 (1997). Although SNG is the prevailing party, there are several categories of fees incurred by SNG that do not appear to the court to be allowable. First, former special counsel to SNG, McManus Faulkner & Morgan, expended substantial efforts to enforce a conditional settlement agreement with Shores and to enjoin the sale of Shores' interest in the note and deed of trust to Berkley. Those efforts were ill-conceived and did not further SNG's litigation objectives. To pursue these efforts, McManus Faulkner & Morgan incurred $98,410 in fees, which are disallowed for purposes of this motion.

Next, if an action asserts both contract and tort claims, §1717 applies only to attorneys' fees incurred to litigate the contract claims. Santisas v. Goodin, 17 Cal. 4th at 615. SNG contends that neither general counsel, Binder & Malter, nor special counsel, Stein & Lubin LLP, performed any services on the tort claims asserted. It suggests that some percentage of McManus Faulkner & Morgan's net fees of $207,609.86, perhaps $25,000, should be allocated to the tort claims that were dismissed on summary judgment. It appears that the amount that SNG would allocate to the tort claims is understated. In its discretion, the court would disallow a greater amount. The tort claims comprise one-third of the twelve claims asserted in the removed action. Accordingly, the court will reduce SNG's fee request by one-third of McManus Faulkner & Morgan's net fees of $207,609.86, or $69,203.29.

The final category of services for which fees will be disallowed is pursuit of the claims against non-Shores defendants George Hall, Carl G. Oblinger and the Carl G. Oblinger Trust, and Crown Motel LLC. Each of these non-Shores defendants obtained summary judgment in its favor on all claims asserted against them. SNG was not the prevailing party with respect to the claims against these non-Shores defendants. McManus Faulkner & Morgan did not include a breakdown of its fees attributable to this category. There is necessarily some overlap between this category and the prosecution of the tort claims, for which the court already has reduced the fee award. In its discretion, the court will further disallow $20,000 in fees to account for services related to the claims against George Hall, Carl G. Oblinger and the Carl G. Oblinger Trust, and Crown Motel LLC. The aggregate amount of fees disallowed is $187,613.29. SNG is granted an award of fees in the amount of $495,018.07 pursuant to

10

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR ATTORNEYS' FEES**

Civil Code § 1717 as the prevailing party.

**II. Some of the Non-Shores Defendants Are Prevailing Parties.**

When a party obtains a simple, unqualified victory on a contract claim, the court has no discretion to deny attorneys' fees, and that party is entitled to recover its reasonable fees under Civil Code §1717 as of right. Hsu v. Abbara, 9 Cal. 4th at 877. Non-Shores defendants George Hall, Carl G. Obliger and the Carl G. Obliger Trust, and Crown Motel LLC obtained summary judgment in their favor on all claims asserted against them in both actions. To the extent that tort claims were included, attorneys' fees incurred in defending tort claims are compensable under §1717 when the defense is interrelated with and necessary to the enforcement of the contract. Wagner v. Benson, 101 Cal App. 3d 27, 37 (Cal. Ct. App. (4th Dist.) 1980); Nevin v. Salk, 45 Cal App. 3d 331, 340 (Cal. Ct. App. (4th Dist.) 1975). George Hall, Carl G. Obliger and the Carl G. Obliger Trust, and Crown Motel LLC may recover attorneys' fees although they are not signatories to the loan agreement. A party that is not a signatory to the contract containing the fee provision is entitled to recover its attorneys's fees if it would have been liable for the fees of the opposing party if that party had prevailed. Dell Merk, Inc. v. Franzia, 132 Cal. App. 4th 443, 451 (Cal. Ct. App. (3rd Dist.) 2005). See also Hsu v. Abbara, 9 Cal. 4th at 870 (party is entitled to attorneys' fees under § 1717 even if that party prevails on grounds that the contract is unenforceable against that party if the other party would have been entitled to fees had it prevailed). Here, SNG would have been entitled to recover attorneys' fees from these parties had it prevailed on the claims against them. This rule serves the purpose of mutuality of remedy under § 1717.

Non-Shores defendants Darren Carrington, Vickie L. Carrington, Dorothy Juanita Knott, and Shelley E. Giacopuzzi are not entitled to recovery of their fees because SNG voluntarily dismissed the claims against them in the removed action. Civil Code § 1717(b)(2) provides that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section." See also Santisas v. Goodin, 17 Cal. 4th at 602. Shores allocated $196,925 in fees and expenses to the representation of all eight non-Shores defendants. The court will reduce the amount sought by the non-Shores defendants by $20,000 to account for the services related to the claims against Darren Carrington, Vickie L. Carrington, Dorothy Juanita Knott,

11

and Shelley E. Giacopuzzi, who SNG voluntarily dismissed from the proceeding.

The court grants an award of attorneys' fees and expenses in the amount of $176,925 to George Hall, Carl G. Obliger and the Carl G. Obliger Trust, and Crown Motel LLC pursuant to § 1717. This award includes an allowance for expenses sought by the non-Shores defendants notwithstanding that SNG asserts there is a stipulation for each party to bear its own costs. SNG did not seek its costs in this motion. Shores and the non-Shores defendants, however, contend that the stipulation applies only to statutory costs, such as filing fees. Where there is no meeting of the minds on a material point, no enforceable agreement is formed. Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 215 (Cal. Ct. App. (6th Dist.) 2006); Banner Entertainment, Inc. v. The Superior Court of Los Angeles Co., 62 Cal. App. 4th 348, 359 (Cal. Ct. App. (2nd Dist.) 1998). Consequently, the court will not enforce the stipulation to bear one's own costs but, by this order, assesses a portion of the costs of the non-Shores defendants to SNG.

**III.     Shores LLC is Entitled to Attorneys' Fees as Part of its Claim Pursuant to § 506(b)**.

Bankruptcy Code § 506(b) provides another exception to the American Rule by allowing attorneys' fees to certain oversecured creditors as part of their claim. It provides: "To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." Section 506(b) does not require that attorneys' fees be awarded only when the fees would be allowable under state law. In re Kord Enterprises II, 139 F.3d 684, 688-89 (9th Cir. 1998). It establishes a federal right to reasonable attorneys' fees for an oversecured creditor irrespective of state law. In re McGaw Property Mgmt., Inc., 133 B.R. 227, 230 (Bankr. C.D. Cal. 1991).

The legislative history to § 506(b) reflects that Congress considered and rejected the notion that an oversecured creditor's attorneys' fees should be subject to state law. Id. at 689; In re 268 Limited, 789 F.2d 674, 676-77 (9th Cir. 1986); In re Boulders on the River, Inc., 169 B.R. 969, 976 (Bankr. D. Or 1994). The House bill qualified the fees allowable "to the extent collectible under applicable law." H.R. 8200, 95th Cong. (1977). The Senate bill, which was ultimately adopted, omitted the reference to

12

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR ATTORNEYS' FEES**
Case: 04-05102    Doc# 74    Filed: 08/27/07    Entered: 08/28/07 17:02:13    Page 12 of 15

state law but contained a reasonableness limitation. S. 2266, 95th Cong., 1st Sess. (1977). Senator De Concini and Representative Edwards both stated that the House version had been rejected in favor of the Senate version, and that fee agreements would be enforceable "notwithstanding contrary law." 124 Cong. Rec. 32,398, 33,997 (1079)(quoted in 268 Limited, 789 F.2d at 676). That a secured creditor is not entitled to attorneys' fees under § 1717 as a prevailing party does not preclude a recovery under § 506(b). McGaw Property Mgmt., 133 B.R. at 230. See also Boulders on the River, Inc., 169 B.R. 969 (right to fees under § 506(b) and O.R.S. 20.096, Oregon's equivalent to California Civil Code § 1717).

When fees are provided for in the underlying agreement, and the creditor is oversecured, allowance of attorneys' fees is mandatory. In re Dalessio, 74 B.R. 721, 723 (B.A.P. 9th Cir. 1987). To be eligible for attorneys' fees under § 506(b), a creditor must satisfy four elements: (1) the creditor's claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement. Kord Enterprises II, 139 F.3d at 689; In re Alpine Group, Inc., 151 B.R. 931, 935 (B.A.P. 9th Cir. 1993). The parties do not dispute that the first two elements are satisfied.

A determination of the reasonableness of the fees is not dictated by the amount that would be allowable under state law but requires an independent review. 268 Limited, 789 F.2d at 675-77. The bankruptcy court has broad discretion to determine the amount of fees. Dalessio, 74 B.R. at 724. The key factors are whether the creditor incurred fees and expenses that fall within the scope of the fee provision in the agreement and whether a similarly situated creditor would have reasonably concluded that the actions should be taken to protect its interests. Id. at 723. Having carefully reviewed the contemporaneous time records of counsel for Shores, it appears that the balance of the fees and expenses sought in the amount of $320,432 are reasonable under § 506(b).

The fee provision is broadly stated and expressly includes actions taken to enforce payment of the note in bankruptcy proceedings. Where resolution of an adversary proceeding instituted by the debtor is necessary to the creditor's ability to enforce payment of the note, the attorneys' fees incurred in litigating the adversary proceeding, including any tort claims, come within the scope of the contract provision. See In re Auto Specialties Mfg. Co., 18 F.3d 358, 362 (6th Cir. 1994). Here, the fees and expenses fall within the scope of the attorneys' fee provision in the note, hence, they are allowable under

13
**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR ATTORNEYS' FEES**
Case: 04-05102   Doc# 74   Filed: 08/27/07   Entered: 08/28/07 17:02:13   Page 13 of 15

§ 506(b).

## CONCLUSION

SNG's motion for attorneys' fees as the prevailing party pursuant to Civil Code § 1717 is granted, and fees in the amount of $495,018.07 are allowed. Non-Shores defendants George Hall, Carl G. Obliger and the Carl G. Obliger Trust, and Crown Motel LLC are granted an award of attorneys' fees in the amount of $176,925 pursuant to § 1717. Shores' motion for attorneys' fees pursuant to § 1717 is denied. Pursuant to § 506(b), Shores is allowed attorneys' fees and expenses totaling $320,432 as part of its secured claim.

Good cause appearing, IT IS SO ORDERED.

\* \* \* **END OF ORDER** \* \* \*

14

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR ATTORNEYS' FEES**
Case: 04-05102   Doc# 74   Filed: 08/27/07   Entered: 08/28/07 17:02:13   Page 14 of 15

Adversary No. 03-5504

**SERVICE LIST**

| | |
|---|---|
| ELLEN CIRANGLE<br>PATRICIA BONHEYO<br>STEIN & LUBIN LLP<br>600 MONTGOMERY STREET 14TH FLOOR<br>SAN FRANCISCO CA 94111 | DAVID S QUINTANA<br>LAW OFFICE OF DAVID S QUINTANA<br>300 ESPLANADE DRIVE SUITE 1180<br>OXNARD CA 93036 |